ALICE M. STUART *vs.* RELIANCE INSURANCE COMPANY.
SAME *vs.* DELAWARE INSURANCE COMPANY.

Suffolk.  March 7, 1901. — June 21, 1901.

Present: HOLMES, C. J., MORTON, LATHROP, BARKER, & HAMMOND, JJ.

*Insurance, Fire,* Provision prohibiting sale of property. *Agency.*

Whether the prohibition of the sale of the insured property without the assent in writing of the company in the standard form of fire insurance policy, prescribed

by St. 1894, c. 522, § 60, applies to a sale on execution or to a foreclosure sale not within the control of the policy holder or of the company, *quære.*

Assuming that a sale on execution of property insured against fire, and the expiration of the time for redemption, might be a violation of the provision in the standard form of policy, that the property shall not be sold without the assent in writing of the company, there is no violation of the provision so long as there is a right of redemption leaving an insurable interest in the policy holder.

The provision in the standard form of fire insurance policy, that the property shall not be sold without the assent in writing of the company, is violated by a temporary alienation of the property.

A fire insurance policy in the standard form, containing the usual prohibition of the sale of the property insured without the assent in writing of the company, was made payable in case of loss to a mortgagee named. A creditor of the assured mortgagor sold the property on execution. Thereafter the mortgagee foreclosed and through another conveyed the property back to the assured mortgagor. The insurance company did not assent in writing to the sale on execution or to the foreclosure sale. After the sale on execution and again after the foreclosure sale the assured notified the agent of the insurance company through whom the policy was issued of the respective sales and requested him to notify the company and keep the policy in force. After foreclosure the mortgagee released his interest as mortgagee in the policy, and the agent assented in writing to the release. Thereafter the assured made a new mortgage of the property and the policy was made payable to the new mortgagee. To this the agent assented in writing in behalf of the company. The company was organized in another State and the agent held a certificate as agent of the company issued by the insurance commissioner under St. 1894, c. 522, § 91. In an action on the policy, it was *held,* that, whether the sales were within the prohibition of the policy or not, the circumstances would warrant a jury in finding, that the recognition of the policy thereafter by the agent as a valid and subsisting policy was within the scope of his authority, and that under the statute named the company was bound by it; *also,* that the agent's action well might have been found to have been taken with the knowledge and acquiescence of the company or at least with such notice on its part as required it to exercise its right to avoid the policy within a reasonable time, or to be regarded as having waived it.

Two ACTIONS OF CONTRACT upon policies of insurance against fire in the form prescribed by St. 1894, c. 522, § 60, upon a dwelling house and building materials of the plaintiff. Writs dated September 1, 1900.

The answer in each case alleged, that in violation of the provisions of the policy the insured property had been sold without the assent in writing of the company, whereby the policy became void. The cases were heard in the Superior Court, by *Gaskill,* J., who reported them for the consideration of this court. The action of the judge, the terms of the reservation and all material facts are stated in the opinion of the court.

*H. P. Moulton,* (*J. F. Quinn* with him,) for the defendants.

*C. E. Shattuck,* for the plaintiff.

MORTON, J.  These are two actions upon policies of insurance issued to the plaintiff by the respective defendants úpon a dwelling house and building materials belonging to her and situate in Marblehead.  The two actions were tried and argued together.  The policies are in the Massachusetts standard form, and each provides amongst other things that it shall be void if the property insured shall be sold without the assent in writing of the company.  At the trial the facts were agreed, and the defendants requested the court to direct verdicts for them.  The judge refused to do so, and thereupon the defendants, not desiring to go to the jury, consented that, subject to their exception to the refusal of the court to rule as requested, verdicts should be directed for the plaintiff, which was done.  The cases are here upon the report of the presiding justice which concludes as follows : " If upon the facts there can be a recovery for the plaintiff judgments are to be entered on the verdicts ; otherwise the verdicts are to be set áside and a new trial granted."

From the facts as agreed it appears that the policy of the .Reliance Company was issued September 9, 1897, and that of the Delaware Company April 14, 1898, and that the loss occurred May 17, 1900.  Both policies were for five years and were made payable in case of loss to Benjamin L. Kimball, mortgagee, and to each there was " a rider attached, insuring, during process of construction, materials for said building in and about the premises."  And the report states that from the time when the policies were issued to the time of the fire the plaintiff had materials on the premises and that part of the loss was on such materials.  On September 20, 1898, a creditor of the plaintiff sold on execution the real property insured but not the building material, and on September 25, 1899, Kimball foreclosed his mortgage and conveyed the property to one Jackson who on October 7, 1899, conveyed it to the plaintiff.  " Jackson acted throughout this transaction as the agent and trustee of the plaintiff and the purchase money paid the mortgagee at the foreclosure sale was furnished by the plaintiff."  The conveyances from Kimball to Jackson and from Jackson to the plaintiff " were parts of one transaction the object of which was to immediately vest the entire interest in the property in the plaintiff," and the delay from September 25 to October 7 was caused

by the absence of one of the parties to the deeds. The written assent of the defendants to the sale on execution and to the foreclosure sale was not obtained. Shortly after the sale on execution, namely, about October 24, 1898, the plaintiff's husband who acted throughout the matter of insurance as her agent, notified one Newhall through whom the policies were issued and who was the agent of the defendants, that the property had been sold on execution, and requested him to keep the policies in force, and give the companies any notice that was necessary for that purpose. After the foreclosure sale and prior to November 6, 1899, the plaintiff's husband also notified Newhall that the foreclosure sale had occurred, and requested him to notify the companies to keep the policies in force. Kimball released his interest as mortgagee in the Reliance policy and Newhall as agent of that company assented in writing to the release November 6, 1899. On October 7, 1899, the plaintiff mortgaged the premises to one Caroline E. Marsh and this policy was made payable to her as mortgagee and Newhall as agent of the company assented in writing November 6, 1899. Kimball released his interest as mortgagee in the Delaware policy March 10, 1900, and this also was assented to in writing by Newhall as agent for that company. When the policies were issued and throughout the period covered by these transactions Newhall was the duly appointed agent of the defendants in this Commonwealth, and held as such a certificate or license from the insurance commissioner issued in accordance with St. 1894, c. 522, § 91, which continued in force all the time. Section 91 above referred to provides amongst other things that " while such certificate remains in force the company shall be bound by the acts of the person named therein within his apparent authority as its acknowledged agent."

The defendants contend that the policies are void because the property was sold without their written assent, that the word " property " in the condition means the dwelling house and does not include the building material, that Newhall had no authority to waive the condition, and that if he had such authority there is no evidence of waiver by him.

There may be some question whether a sale on execution or a foreclosure sale comes within the terms of these policies. Such

a sale would not be within the control of the policy holder or of
the company. See *Smith* v. *Putnam,* 3 Pick. 221. But if we
assume that the provision in the policy means if the property
shall be sold in any way, it is clear that a sale on execution does
not constitute a sale within the meaning of the provision so long
as there is a right of redemption ; in other words so long as an
insurable interest remains in the policy holder. *Strong* v. *Man-
ufacturers' Ins. Co.* 10 Pick. 40. *Clark* v. *New England Ins. Co.*
6 Cush. 342. *Clinton* v. *Norfolk Mutual Ins. Co.* 176 Mass. 486.
But from September 20, 1899, when the right to redeem expired
to the twenty-fifth of the same month, when the foreclosure sale
occurred, the plaintiff was entirely divested of any title to or in-
terest in the dwelling house. The plaintiff contends that this
was only a temporary matter, that the dwelling house was only a
part of the property insured, and that the want of a written assent
was waived by the companies. The fact that the alienation was
a temporary one would not, it seems to us, render it any the less
operative or effectual to avoid the policy. *Hill* v. *Middlesex Mu-
tual Assurance Co.* 174 Mass. 542. But we think that there was
evidence of a waiver by the defendants of a written assent both
in regard to the sale on execution and the foreclosure sale. The
defendants were foreign companies. Newhall was the duly ap-
pointed agent of each of them within this Commonwealth. He
had a certificate as such from the insurance commissioner. It
does not appear that the defendants had any other agent in this
State. There is nothing to show, as there was in many of the
cases relied on by the defendants, that the authority which he
had was a limited authority. The policies were issued through
him. More than a year after the execution sale he assented in
writing as agent of the Reliance Company to a release by Kim-
ball of his interest as mortgagee in the policy issued by that
company, and to a transfer of the policy to Caroline E. Marsh
as mortgagee. At a still later date he assented in writing as
the agent of the Delaware Company to a release by Kimball as
mortgagee of his interest in that policy. He was thus recogniz-
ing the policies as valid and subsisting policies long after the
sale on execution and the foreclosure sale had taken place. In
view of all these circumstances we think that the jury would
have been warranted in finding that what he did was within the

apparent scope of his authority, and, if it was, then under the statute referred to above, the defendants were bound by it. Moreover, shortly after each sale he was notified that it had taken place and was requested to give the companies notice to keep the policies in force. It is to be presumed that he did so. And his action in subsequently recognizing the policies as valid and subsisting policies might well have been found to have been with the knowledge and acquiescence of the companies, or at least with such notice on their part as required them to exercise their right to avoid the policies within a reasonable time or they would be regarded as having waived it.

The result is that we think that there should be judgment on the verdicts.

*So ordered.*